Filed 7/20/23  P. v. Bravo CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H047752, H049726 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1646260) |
| v. | |
| HUMBERTO BRAVO, | |
| Defendant and Appellant. | |

## I.  INTRODUCTION

Defendant and two codefendants were tried in 2018 for the murder of a rival gang member.  Defendant was convicted of second degree murder, and the jury found true gang and firearm enhancements.  The trial court imposed a total sentence of 40 years to life.

In case No. H047752, defendant asserts that the jury was instructed on a theory of murder that is no longer valid due to changes after his trial to Penal Code sections 188 and 189,[1] and that his conviction was likely based on this now-invalid theory.  The Attorney General concedes that defendant's conviction must be reversed on this basis.  Defendant asserts remand for retrial is not appropriate because he could not be convicted of second degree murder under a theory that remains viable under current law.  The

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

Attorney General contends that defendant can still be convicted of second degree murder as a direct aider and abettor of the murder, and thus the matter should be remanded for retrial. Defendant also raises several other assertions of error during his trial, arguments the Attorney General asserts are rendered moot because defendant's conviction must be reversed for the instructional error.

In case No. H049726, defendant appeals from the trial court's denial of his petition for resentencing. In case No. H049726, defendant raises the same arguments that he was convicted on an invalid theory of murder as he did in case No. H047752, and the Attorney General makes the same concession.[2]

In case No. H047752, we accept the Attorney General's concession that defendant's conviction must be reversed. We remand this matter to permit the prosecution to retry defendant if the prosecution can in good faith advance a valid theory of defendant's culpability. This disposition means we need not decide whether the trial court erred in the other ways defendant alleges. We dismiss defendant's appeal in case No. H049726 as moot.

## II. BACKGROUND

Defendant and codefendants including Alex Arjona were charged by information with the murder of David Escalera. (§ 187.) The information alleged defendant committed the offense to benefit a criminal street gang. (§ 186.22, subd. (b)(5).) The information also alleged defendant was a principal in the murder and a principal personally discharged a firearm, causing the death of Escalera. (§ 12022.53, subds. (b)–(e)(1).) A jury found defendant guilty of second degree murder, and it found true the gang and firearm enhancement allegations.

---

[2] This court ordered the appeal from the trial court's denial of the petition for resentencing and the earlier appeal from the judgment of conviction to be considered together for briefing, oral argument, and disposition.

2

Defendant and Arjona were members of a Sureño gang. Defendant, Arjona, and other people were in the parking lot of an apartment complex in an area claimed by the Sureño gang. Escalera, who was a member of a rival Norteño gang, was walking through this neighborhood with his girlfriend. Defendant pointed out to Arjona that a "buster" (a derogatory term for a Norteño gang member) was coming, and defendant told Arjona to retrieve a gun. Arjona obtained the gun from the waistband of one of the other Sureño members present at the scene.

As defendant's group drew nearer to Escalera and his girlfriend, Escalera said into his phone that he was about to be "jumped" by some Sureño gang members. Around this same time, defendant or a member of his group yelled, "[G]et that fool," or words to that effect. Escalera pulled out a gun. The evidence at trial was disputed as to whether Escalera fired the gun; however, none of the casings or other materials recovered from the scene matched Escalera's gun and the gun's safety was engaged when the weapon was recovered. Arjona shot at Escalera, hitting him at least three times and killing him.

At trial, the prosecution presented three theories as to why defendant was guilty of murder, even though Arjona was the one who fired the gun. The prosecutor argued defendant was guilty as a conspirator to commit murder, as a direct aider and abettor of murder, or as an aider and abettor of an assault on Escalera, which led to the murder as a natural and probable consequence of the intended assault. Regarding the last theory, the prosecutor argued the jury could find defendant guilty of murder because "a co-participant in the assault to inflict great bodily injury, or conspiracy to assault to inflict great bodily injury, committed murder, and murder was a natural [and] probable consequence of that crime." The prosecutor argued that the jury could only find defendant guilty of second degree murder under this theory, because "if you find this to be the case, [defendant and a codefendant] were going to commit an assault with intent to inflict great bodily injury and someone ended up getting killed. They're still responsible under the natural and probable consequences theory." To support this

3

argument, the prosecutor asserted that under the circumstances, "when you tell someone to get a gun when you're going to jump someone, that a natural and probable consequence of that is someone is going to get shot."

The trial court instructed the jury that it could find defendant guilty of murder under the natural and probable consequences doctrine if the jury found under all the circumstances that "a reasonable person in the defendant's position would have known the commission of the murder . . . was a natural [and] probable consequence of the commission of the conspiracy to assault by force likely to inflict great bodily injury, and/or assault by force likely to commit great bodily injury."  The trial court instructed the jury that if it found defendant guilty of murder under the natural and probable consequences doctrine, the conviction must be for second degree murder.

After the jury found defendant guilty of second degree murder but before sentencing, defendant moved for a new trial, citing newly enacted changes to the Penal Code that specified the natural and probable consequences doctrine can no longer support a murder conviction.  The trial court's ruling on the motion for a new trial recognized that after defendant's trial, section 188 had been amended to abrogate the natural and probable consequences doctrine, that the amendments applied retroactively to defendant's case, and that at trial, the prosecutor advanced the natural and probable consequences doctrine as a theory of defendant's culpability for murder.  However, the trial court denied the motion, ruling that defendant was required to follow the procedures outlined in section 1170.95 (now section 1172.6) by filing a petition for resentencing after he was sentenced.  The trial court sentenced defendant to 15 years to life for the murder and a consecutive sentence of 25 years to life for the firearm enhancement.

Defendant appealed the trial court's judgment.[3]  This court granted defendant's application for a stay of the appellate proceedings and returned this matter to the trial

[3] This court granted defendant's application for relief from default for failure to timely file a notice of appeal.

court to permit defendant to petition for resentencing under section 1170.95 (now section 1172.6). The trial court issued an order to show cause on defendant's petition and conducted an evidentiary hearing. At the evidentiary hearing, the prosecution did not introduce any new evidence, relying on the record from defendant's trial. The trial court denied the petition, concluding that defendant was ineligible for resentencing because "the record contains proof beyond a reasonable doubt that the defendant is guilty of implied malice second degree murder." Defendant then appealed the denial of his resentencing petition.

### III. DISCUSSION

Defendant asserts that his murder conviction must be reversed because the jury was instructed on the natural and probable consequences doctrine, a doctrine rendered invalid after his trial by legislative amendments to the Penal Code. Defendant also asserts that while the jury most likely convicted him of murder under the natural and probable consequences doctrine, the other theory the jury could have convicted him under was as an aider and abettor of implied malice second degree murder, a theory he asserts is invalid under amendments to the Penal Code that took effect after his trial. Defendant also asserts that substantial evidence does not support the gang and firearm enhancements under recent legislative amendments, that the trial court erred in refusing to answer a question from the jury concerning self-defense, that a jury instruction concerning self-defense was erroneous, that prosecutorial misconduct deprived him of a fair trial, that the trial court violated his rights to a fair trial and an unbiased jury by permitting courtroom spectators to wear shirts with Escalera's picture on them, and that the cumulative impact of prejudice from the erroneous instructions rendered his trial unfair.

The Attorney General concedes that the "primary theory" the prosecution advanced for defendant's guilt of second degree murder "was that the murder was a natural and probable consequence of an assault." Because of this, and because the jury

5

was instructed defendant could be convicted of second degree murder if the shooting was the natural and probable consequence of defendant's intended assault of Escalera, the Attorney General concedes that defendant's conviction for second degree murder must be reversed and the matter should be remanded for retrial under a valid theory of culpability. The Attorney General argues defendant is entitled to reversal and remand under his direct appeal from the trial court's judgment, and therefore defendant's appeal from the denial of his resentencing petition is moot. The Attorney General then asserts, contrary to defendant's argument, that implied malice second degree murder for direct aiders and abettors remains a valid legal theory, and therefore defendant can be retried under this theory. The Attorney General contends defendant's remaining claims are moot, because the Attorney General concedes that the murder conviction and the associated enhancements must be reversed and are subject to retrial.

We accept the Attorney General's concession that reversal is warranted because the jury was instructed on a theory of murder that is no longer valid, and the record does not demonstrate beyond a reasonable doubt that the conviction was not based on this theory. We therefore reverse defendant's second degree murder conviction and vacate the associated enhancements, and we remand the matter to the trial court for retrial.

## A. *Legal Principles*

Murder is the unlawful killing of a human being with malice aforethought. (§ 187, subd. (a).) The malice necessary for a killing to constitute murder comes in two forms, express or implied. (§ 188, subd. (a).) "Malice is express when there is manifested a deliberate intention to unlawfully take away the life of a fellow creature." (*Id.*, subd. (a)(1).) "Malice is implied when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." (*Id.*, subd. (a)(2).) Prior to recent amendments to the Penal Code, "[t]he natural and probable consequences doctrine made 'a person who aids and abets a confederate in the commission of a criminal act . . . liable not only for that crime (the target crime), but also

for any other offense (nontarget crime) [including murder] committed by the confederate as a "natural and probable consequence" of the crime originally aided and abetted.' [Citation.]" (*People v. Johns* (2020) 50 Cal.App.5th 46, 58.) Under this doctrine, "if a person aids and abets only an intended assault, but a murder results, that person may be guilty of that murder, even if unintended, if it is a natural and probable consequence of the intended assault. [Citation.]" (*People v. McCoy* (2001) 25 Cal.4th 1111, 1117.) Therefore, "the natural and probable consequences doctrine constituted an exception to the requirement of either express or implied malice for a murder conviction. [Citation.]" (*People v. Vargas* (2022) 84 Cal.App.5th 943, 953.)

Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) " 'amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' [Citation.]" (*People v. Gentile* (2020) 10 Cal.5th 830, 842 (*Gentile*).) "[T]o amend the natural and probable consequences doctrine, Senate Bill 1437 added section 188, subdivision (a)(3) . . . : 'Except [for felony-murder liability] as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime.' " (*Id.* at pp. 842–843.) Thus, "Senate Bill 1437 bars a conviction for second degree murder under the natural and probable consequences theory." (*Id.* at p. 839.) Senate Bill 1437 also added section 1170.95 (now section 1172.6) "to provide a procedure for those convicted of felony murder or murder under the natural and probable consequences doctrine to seek relief . . . ." (*Gentile*, *supra*, at p. 843.)

"When a trial court instructs the jury on alternative theories of guilt and at least one of those theories is legally erroneous at the time it was given, we normally assess whether the error was harmless beyond a reasonable doubt under *Chapman v. California*

7

(1967) 386 U.S. 18, 24 . . . . [Citation.]" (*Gentile*, *supra*, 10 Cal.5th at p. 851.) This harmless beyond a reasonable doubt standard also applies to the instant situation where an instruction on alternative theories of guilt was correct at the time, but Senate Bill 1437 later rendered one of these theories invalid. (*People v. Wilson* (June 8, 2023, S189373) ___ Cal.5th ___ [pp. 43–46].) "We 'must reverse the conviction unless, after examining the entire cause, including the evidence, and considering all relevant circumstances, [we] determine[ ] the error was harmless beyond a reasonable doubt.' [Citation.]" (*Gentile*, *supra*, at p. 851.) In reviewing for harmlessness beyond a reasonable doubt, "a reviewing court may hold the error harmless where it would be impossible, based on the evidence, for a jury to make the findings reflected in its verdict without also making the findings that would support a valid theory of liability. [Citation.]" (*In re Lopez* (2023) 14 Cal.5th 562, 568 (*Lopez*).) "[W]hile 'overwhelming' evidence may demonstrate harmlessness, a court's analysis of whether the evidence is 'overwhelming' in this context is not as subjective or free-ranging as that term might imply. Instead, the analysis requires a court to rigorously review the evidence to determine whether any rational juror who found the defendant guilty based on an invalid theory, and made the factual findings reflected in the jury's verdict, would necessarily have found the defendant guilty based on a valid theory as well. [Citation.]" (*Ibid.*)

**B.** *Analysis*

We accept the Attorney General's concession that "there is nothing in the record demonstrating that the jury relied on a still valid theory of second degree murder liability." The jury was instructed that defendant could be convicted of second degree murder under the natural and probable consequences doctrine. The prosecutor argued that the jury could find defendant guilty of second degree murder under this doctrine based on defendant's actions to effect an assault on Escalera, and the Attorney General acknowledges that this was the "primary theory" the prosecutor advanced for second degree murder. The record demonstrates defendant's actions in promoting an assault on

8

Escalera, including pointing out Escalera's status as a rival gang member, encouraging Arjona to retrieve the gun, and his (or possibly another person's) statement to "[G]et that fool." Based on this evidence, the jury could have concluded that defendant intended to aid and abet an assault of Escalera, the natural and probable consequence of which was Escalera's death, without necessarily concluding that defendant possessed the mens rea necessary for aiding and abetting second degree murder. In this situation, we cannot conclude that any rational juror who found the defendant guilty based on the now-invalid natural and probable consequences doctrine would necessarily have found defendant guilty based on a valid theory as well. (*Lopez*, *supra*, 14 Cal.5th at p. 568.) We therefore hold that the trial court's instructions, which were erroneous under the later changes enacted by Senate Bill 1437, were not harmless beyond a reasonable doubt.

Although the parties agree defendant's murder conviction must be reversed, they disagree as to the consequences of this reversal. Defendant asserts that the other theory the prosecution advanced for second degree murder, directly aiding and abetting the murder, is legally invalid under recent changes to the law, because "[p]ermitting a conviction for second degree murder based on aiding and abetting an implied malice murder is in effect based on the application of the natural and probable consequences doctrine, which is no longer valid." Thus, defendant argues, "since there was no valid theory under the new law to convict him of second-degree murder, he cannot be retried for that crime." The Attorney General cites to several published decisions that have held that an aider and abettor may still be convicted of second degree murder under current law, and thus the Attorney General asserts that the matter should be remanded for retrial, rendering the appeal of the trial court's denial of defendant's resentencing petition moot.

In *Gentile*, the California Supreme Court addressed an assertion by amicus curiae that Senate Bill 1437 did not eliminate the natural and probable consequences doctrine, but instead merely added the element of malice aforethought to natural and probable consequences culpability. (*Gentile*, *supra*, 10 Cal.5th at p. 849.) The court rejected this

9

argument for a " 'hybrid doctrine,' " observing that in two factual situations amicus curiae cited to support this argument, "second degree murder in both cases might have been pursued under a direct aiding and abetting theory." (*Id.* at p. 850.) The court continued: "Therefore, notwithstanding Senate Bill 1437's elimination of natural and probable consequences liability for second degree murder, an aider and abettor who does not expressly intend to aid a killing can still be convicted of second degree murder if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life." (*Ibid.*) Several published decisions from the Courts of Appeal have cited this language in holding that aiding and abetting remains a valid theory of liability for implied malice second degree murder. (*People v. Werntz* (2023) 90 Cal.App.5th 1093, 1111–1113; *People v. Silva* (2023) 87 Cal.App.5th 632, 639–640; *People v. Vizcarra* (2022) 84 Cal.App.5th 377, 388–392; *People v. Glukhoy* (2022) 77 Cal.App.5th 576, 589–591; *People v. Cortes* (2022) 75 Cal.App.5th 198, 205; *People v. Langi* (2022) 73 Cal.App.5th 972, 983; *People v. Superior Court* (*Valenzuela*) (2021) 73 Cal.App.5th 485, 499; *People v. Powell* (2021) 63 Cal.App.5th 689, 710–714.) Recently, the California Supreme Court noted in reviewing a trial court's denial of a petition for resentencing that "[c]ase law has recognized and applied" the theory of direct aiding and abetting implied malice second degree murder "and we see no basis to abrogate it." (*People v. Reyes* (June 29, 2023, S270723) ___ Cal.5th ___ [p. 11].)

We need not decide whether defendant's argument concerning the continuing validity of implied malice second degree murder has merit. "When there has been a postconviction change in the statutory or decisional law that invalidates a theory upon which the conviction was based and reversal is warranted, appellate courts remand the case to the trial court to allow the prosecution to retry the defendant on a legally valid theory. This is well settled." (*People v. Hola* (2022) 77 Cal.App.5th 362, 371 (*Hola*).) Section 1172.6, subdivision (g), provides: "A person convicted of murder, attempted murder, or manslaughter whose conviction is not final may challenge on direct appeal

10

the validity of that conviction based on the changes made to Sections 188 and 189 by Senate Bill 1437 . . . ."[4]  Where a defendant's murder conviction is reversed based on a direct appeal of the trial court's judgment under section 1172.6, subdivision (g), "the prosecution is entitled to retry him [or her] on that charge if it can *in good faith* advance a valid legal theory to support the conviction.  [Citation.]"  (*Hola*, *supra*, at p. 377.)  Because we reverse defendant's murder conviction, the prosecution may decide whether, based on the facts of this case and the authorities outlined above, it can in good faith advance a valid theory that defendant is guilty of second degree murder.

Our disposition regarding defendant's appeal under section 1172.6, subdivision (g), eliminates the need to address defendant's appeal of the trial court's ruling on his petition for resentencing.  The ability to seek relief on direct appeal represents an " 'alternative' mechanism for relief for those whose matters were pending on appeal when Senate Bill 1437 was enacted."  (*Hola*, *supra*, 77 Cal.App.5th at p. 370, fn. 7.)  Here, defendant elected to pursue both approaches by appealing from the judgment of conviction and separately appealing from the denial of his petition for resentencing.  Because we reverse the judgment of conviction and remand based on instructional error in defendant's trial, defendant's second appeal from the denial of his petition for resentencing is moot.  Similarly, we need not address defendant's remaining assertions of error regarding the conduct of his trial because we are reversing defendant's conviction and remanding this matter for retrial.

---

[4] Senate Bill 1437 allowed defendants convicted of murder under a theory made invalid by the new law to petition for resentencing, but it contained no explicit provision allowing defendants whose convictions were not yet final to challenge their convictions on direct appeal.  The Legislature later added what is now section 1172.6, subdivision (g), to permit defendants in this situation to challenge the validity of their convictions on direct appeal.  (Stats. 2021, ch. 551, § 2.)

## IV.  DISPOSITION

In case No. H047752, defendant's second degree murder conviction is reversed and the associated enhancements are vacated.  The matter is remanded to the trial court for a new trial on the second degree murder charge and associated enhancements if the prosecution can in good faith advance a valid theory of culpability.

In case No. H049726, defendant's appeal is dismissed as moot.

_____

BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:

_____

DANNER, J.

_____

WILSON, J.

*People v. Bravo*
**H047752**
**H049726**